EISENBERG & BAUM, LLP
ATTORNEYS FOR PLAINTIFF
24 UNION SQUARE EAST
NEW YORK, NY 10003
(212) 353-8700

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---------------------------------------------------------------

| | |
|---|---|
| JESSICA MORALES, | **CIV. NO.** |
| Plaintiff, | **ECF CASE** |
| v. | |
| MERIDIAN HEALTH SYSTEM, INC., JERSEY SHORE MEDICAL CENTER, INC., and RIVERVIEW MEDICAL CENTER, INC., | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

---------------------------------------------------------------

Plaintiff, JESSICA MORALES ("Plaintiff"), by and through her undersigned counsel, EISENBERG & BAUM, LLP, hereby sues Defendants, MERIDIAN HEALTH SYSTEM, INC., JERSEY SHORE MEDICAL CENTER, INC., and RIVERVIEW MEDICAL CENTER, INC. ("Defendants") and alleges as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff is a deaf individual who communicates primarily in American Sign Language ("ASL"), which is her expressed, preferred, and most effective means of communication. Defendants, Meridian Health System, Inc., Jersey Shore Medical Center, and Riverview Medical Center, discriminated against Plaintiff by refusing to provide reasonable accommodations for her disability despite her repeated requests for effective communication. Defendants discriminated against Plaintiff by failing to provide onsite ASL interpreters when necessary and by providing

1

malfunctioning Video Remote Interpreting ("VRI"[1]) systems. Plaintiff brings this action to compel Defendants to cease unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity to participate in and benefit from Defendants' services. Plaintiff seeks declaratory, injunctive, and equitable relief; compensatory and punitive damages; and attorneys' fees and costs to redress Defendants' unlawful discrimination on the basis of disability in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 USC §§ 12181 et seq. and its implementing regulation, 28 C.F.R. Part 36; Section 504 of the Rehabilitation Act of 1973, 29 USC § 794; the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. §§ 10:5-1, et seq.; and other state and common law causes of action.

## THE PARTIES

2.      Plaintiff JESSICA MORALES is an individual residing at 33 Ridge Avenue, Asbury Park, NJ 07712. Ms. Morales is deaf, primarily communicates in American Sign Language, and is substantially limited in the major life activities of hearing and speaking within the meaning of Federal and State, anti-discrimination laws.

3.      Defendant MERIDIAN HEALTH SYSTEM, INC., at all times hereinafter mentioned, is an organization that was and still is licensed and doing business in the State of New Jersey with a principal corporate office at Monmouth Shores Corporate Park, 1350 Campus Parkway, Wall Township, NJ 07753. Meridian Health System owns and operates Jersey Shore Medical Center and Riverview Medical Center. Meridian Health System operates places of public accommodation under Federal and State anti-discrimination laws and is a recipient of federal

---

[1] Video remote interpreting is a video telecommunication service that uses devices such as web cameras or videophones to provide sign language or spoken language interpreting services through a remote or offsite interpreter.

financial assistance, and is therefore subject to the requirements of the ADA, Section 504 of the Rehabilitation Act, and the NJLAD.

4.      Defendant JERSEY SHORE MEDICAL CENTER, INC., at all times hereinafter mentioned, is an organization that was and still is licensed and doing business in the State of New Jersey, with a principal place of business at 1945 Route 33, Neptune, NJ 07753. Jersey Shore Medical Center operates a place of public accommodation under Federal and State anti-discrimination laws and is a recipient of federal financial assistance, and is therefore subject to the requirements of the ADA, Section 504 of the Rehabilitation Act, and the NJLAD.

5.      Defendant RIVERVIEW MEDICAL CENTER, INC., at all times hereinafter mentioned, is an organization that was and still is licensed and doing business in the State of New Jersey, with a principal place of business at 1 Riverview Plaza, Red Bank, NJ 07701. Riverview Medical Center operates a place of public accommodation under Federal and State anti-discrimination laws and is a recipient of federal financial assistance, and is therefore subject to the requirements of the ADA, Section 504 of the Rehabilitation Act, and the NJLAD.

## JURISDICTION & VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for claims arising under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and Title III of the ADA, 42 U.S.C §§ 12181, et seq. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants have sufficient contacts with this District to subject it to personal jurisdiction at the time this action is commenced, and the acts and omissions giving rise to this Complaint occurred within this District.

## STATEMENT OF FACTS AS TO JERSEY SHORE MEDICAL CENTER

8.      On September 18, 2014, Ms. Morales went to the Emergency Room at Jersey Shore University Medical Center due to abdominal pain, which she feared was related to her pregnancy.

9.      On her admission form, Ms. Morales identified herself as Deaf next to her first name, and wrote as her reason for visit: "I might be pregnant and feel pain on my right side. I need an live person interpreter Please Thx".

10.      Ms. Morales remained in the Emergency Department for approximately ten hours, during which time her pain persisted, and she underwent blood testing and a pelvic ultrasound.

11.      Ms. Morales continued to request a live ASL interpreter so that she could understand her condition and the treatment she was receiving, but instead of providing an interpreter, Jersey Shore Medical Center instead attempted to utilize its VRI machine.

12.      The picture on the VRI machine was very blurry, choppy, and inoperable. Ms. Morales had a very difficult time utilizing the service as it did not provide for effective communication.

13.      Additionally, the interpreter on the other end of the VRI connection did not always understand what Ms. Morales' physician was saying.

14.      Ms. Morales was never informed about the status of her own health or that of her child and left Jersey Shore Medical Center in a state of confusion, embarrassment, and frustration.

## STATEMENT OF FACTS AS TO RIVERVIEW MEDICAL CENTER

15.      On October 7, 2014, Ms. Morales went to the Emergency Room at Riverview Medical Center due to abnormal bleeding during her pregnancy.

16.      Ms. Morales requested a live ASL interpreter, but her treating nurse informed her that no interpreter was available.

17.      Instead, the nurse insisted on communicating with Ms. Morales by passing written

notes back and forth while the nurse attempted to set up the VRI system, which was not working.

18. On one of these notes, the nurse wrote: "My manager is coming out. The machine battery is dead. I will call you back when he comes."

19. On another of these notes, the nurse wrote: "Battery is dead on computer. Why are you here?" To which Ms. Morales wrote in reply: "then call Live interpreter, it's a law!"

20. Ms. Morales was eventually examined by a doctor, who checked her belly area and then left the room without communicating with Ms. Morales.

21. After several hours, Ms. Morales underwent a diagnostic ultrasound, after which she returned to her room and fell asleep.

22. Ms. Morales was woken up by a male nurse, who removed an IV from her arm and indicated that she could leave.

23. Ms. Morales was never informed about the status of her own health or that of her child and left Riverview Hospital in a state of confusion, embarrassment, and frustration.

## GENERAL STATEMENT OF FACTS

24. Defendants did not, at any point, provide Plaintiff with adequate auxiliary aids and services to enable her to effectively communicate with Defendants' staff, despite Plaintiff's requests for an onsite ASL interpreter.

25. Effective communication could not have taken place without the aid of a qualified Sign Language interpreter.

26. Defendants knowingly limited Plaintiff to the little communication she could achieve through vague gestures, cryptic notes, and the few words Plaintiff could understand through reading lips.

27. Plaintiff was unable to understand the procedures she underwent and/or the

medication she was provided.

28.     Plaintiff was further unable to give informed consent.

29.     Upon information and belief, Defendants refused to hire qualified on-site sign language interpreters as a matter of policy, without regard to whether VRI services or other methods will provide effective communication.

30.     Defendants have demonstrated and continue to demonstrate, through their interactions with Plaintiff, that Defendants' staff is not properly trained on how to interact with deaf individuals and/or how to utilize VRI systems, resulting in significant delays and communication breakdowns in critical care medical situations.

31.     Lip-reading, the ability to understand the speech of another by watching the speaker's lips, is an extremely speculative means of communication and no substitute for direct doctor patient communication through a qualified sign language interpreter. Only a small amount of the spoken sounds of our language are visible, and many of those appear identical on the lips. Even the most adept lip-readers, in an ideal one-to-one situation, have been found to understand only 26% of what is said.

32.     Defendants, as health care providers, knew or should have known of their obligations under the ADA, Section 504 of the Rehabilitation Act, and the NJLAD to provide accommodations to individuals with disabilities, including individuals who are deaf and/or hearing impaired.

33.     Defendants, as health care providers, knew or should have known that they had an obligation to individuals who are deaf and/or hearing impaired under the ADA, Section 504, and the NJLAD to develop policies to promote compliance with these statutes and to provide reasonable accommodations, including but not limited to the provision of an ASL interpreter to

6

ensure effective communication.

34.    Defendants and their physicians and staff knew or should have known that their actions and/or inactions created an unreasonable risk of causing Plaintiff greater levels of fear, anxiety, indignity, humiliation, and/or emotional distress than a hearing person.

35.    As a result of the actions and/or inactions of Defendants and their physicians and staff, Plaintiff was denied information that is readily and routinely provided to hearing persons, including but not limited to information regarding: the reasons for her admissions and treatment given; the purposes of the treatments being provided; the common risks and/or benefits of surgery and treatments given; the common risks, side effects and benefits of the medication given, as well as the specific dosage range for the medications given; alternative available treatments; the approximate length of her care; the potential side effects of stopping treatment; and/or aftercare instructions, including information regarding any need to continue treatments or arrangements needed to be made for follow up care.

36.    As a result of the actions and/or inactions of Defendants and their physicians and staff, Plaintiff was denied the same opportunities that are readily and routinely provided to hearing persons to make decisions regarding treatments and/or to give consent to such treatments.

37.    Defendants intentionally discriminated against Plaintiff, Jessica Morales and acted with deliberate indifference to her communication needs, causing her to endure humiliation, fear, anxiety, and emotional distress.

38.    Plaintiff would like to patronize Defendant's medical facilities again in the future, but is deterred from doing so based on the discrimination she faced and expects to face.

39.    Based on the close proximity with which Plaintiff lives to Defendants' medical facilities, it is reasonable to infer that Plaintiff would patronize Defendant's medical facilities again,

either by choice or by necessity, if the alleged violations are remedied.

40.     Based on Defendants' previous refusal to accommodate Plaintiff, it is reasonably foreseeable that Defendants will continue to refuse to accommodate Plaintiff again in the future.

41.     On information and belief, Defendants' failure to accommodate, as hereinbefore alleged, is a continuing civil rights violation, insofar as two prior lawsuits against Jersey Shore Medical Center, Inc. and one lawsuit against another hospital within the Meridian Health System, Inc. have provided Defendants notice of these violations, but Defendants have refused to correct them.

## COUNT I: VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

42.     Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

43.     At all times relevant to this action, Title III of the ADA, 42 U.S.C. §§ 12181, et seq. has been in full force and effect and has applied to Defendants' conduct.

44.     At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, were in full force and effect and applied to the Defendants' conduct.

45.     At all times relevant to this action, Plaintiff has been substantially limited in the major life activities of hearing and speaking, and is an individual with a disability as defined under the ADA. 42 U.S.C. § 12102(2).

46.     Defendants own, lease, and/or operate places of public accommodation as defined under Title III of the ADA. 42 U.S.C. § 12181(7)(D).

47.     Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges,

advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

48.     Title III of the ADA defines discrimination to include denying participation or offering unequal or separate benefit to individuals with disabilities. 42 U.S.C. § 12182(b)(1)(A).

49.     Title III of the ADA further defines discrimination to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services . . . ." 42 U.S.C. § 12182(b)(2)(A)(iii).

50.     Title III of the ADA further provides that "[i]t shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

51.     Pursuant to the DOJ implementing regulations for Title III of the ADA, when a public accommodation provides VRI service, it must ensure that the service includes all the following criteria: "(1) [r]eal-time, full-motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication; (2) [a] sharply delineated image that is large enough to display the interpreter´s face, arms, hands, and fingers, and the participating individual´s face, arms, hands, and fingers, regardless of his or her body position; (3) [a] clear, audible transmission of voices; and (4) [a]dequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the VRI." 28 C.F.R. § 36.303(f).

52.     Defendants discriminated against Plaintiff on the basis of her disability by: (1)

denying Plaintiff an equal opportunity to participate in and benefit from Defendants' goods, services, facilities, privileges, advantages, and/or accommodations, in violation of 42 U.S.C. § 12182(b)(1)(A); (2) failing to ensure effective communication through the provision of on-site qualified sign language interpreters, in violation of 42 U.S.C. § 12182(b)(2)(A); and (3) excluding or otherwise denying equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to Plaintiff or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association, in violation of 42 U.S.C. § 12182(b)(1)(E).

53.     On information and belief, the refusal to offer on-site interpreter services is as a result of a policy or practice of Defendants to prohibit or impede the use of on-site qualified sign language interpreters without regard to whether VRI services will provide effective communication.

54.     As set out above, absent injunctive relief there is a clear risk that Defendants' actions will recur with Plaintiff and/or additional deaf persons.

55.     Plaintiff is therefore entitled to injunctive relief, as well as an award of attorney's fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1) and/or common law.

## COUNT II: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

56.     Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

57.     At all times relevant to this action, Section 504 of the Rehabilitation, 29 U.S.C. § 794 has been in full force and effect and has applied to the Defendants' conduct.

58.     At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and applied to the Defendants' conduct.

59.     At all times relevant to this action, Plaintiff has had substantial limitation to the

major life activities of hearing and speaking, and have been individuals with a disability within the meaning of the Rehabilitation Act. 29 U.S.C. § 705(9).

60.     At all times relevant to this action, Defendants have been a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

61.     Pursuant to Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

62.     Defendants discriminated against Plaintiff solely on the basis of her disability by denying her meaningful access to the services, programs, and benefits the Defendants offer to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of 29 U.S.C. § 794.

63.     As set out above, absent injunctive relief there is a clear risk that Defendants' actions will recur with Plaintiff and/or other deaf patients.

64.     Plaintiff is therefore entitled to seek and recover compensatory damages for the injuries and loss she sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

65.     Plaintiff is further entitled to an award of attorney's fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## COUNT III: VIOLATIONS OF THE NEW JERSEY LAW
## AGAINST DISCRIMINATION

66.     Plaintiffs repeats and realleges all preceding paragraphs in support of this claim.

67.     At all times relevant to this action, the New Jersey Law Against Discrimination

(NJLAD), N.J.S.A. §§ 10:5-1, et seq., has been in full force and effect and has applied to the Defendants' conduct.

68.     At all times relevant to this action, Plaintiff has been a person with a disability within the meaning of N.J.S.A. §§ 10:5-5(q) and 10:5-5(w).

69.     At all times relevant to this action, Defendants' facilities have been places of public accommodation within the meaning of N.J.S.A. § 10:5-5(l).

70.     Pursuant to N.J.S.A. § 10:5-12(f)(1), it shall be unlawful discrimination "for any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof . . . on account of . . . disability."

71.     Plaintiff is an aggrieved person within the meaning of N.J.S.A. § 10:5-13, which extends relief to "any person claiming to be aggrieved" by the discrimination of a person on the basis of his or her disability.

72.     Defendants discriminated against Plaintiff on the basis of disability by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations of their place of public accommodation and equal opportunity to participate in and benefit from Defendants' health care services in violation of N.J.S.A. § 10:5-1, et seq.

73.     Defendants further discriminated against Plaintiff by failing to ensure effective communication through an onsite interpreter.

74.     As set out above, absent injunctive relief there is a clear risk that Defendants' actions will recur with Plaintiffs and/or additional Deaf persons.

75.     Plaintiff is therefore entitled to seek and recover compensatory damages for the

injuries and loss she sustained as a result of Defendants' discriminatory conduct as hereinbefore alleged pursuant to N.J.S.A. § 10:5-13.

76.     Plaintiff is further entitled to an award of punitive damages pursuant to N.J.S.A. § 10:5-3.

77.     Plaintiff is further entitled to an award of attorney's fees, costs, and disbursements pursuant to N.J.S.A. § 10:5-27.1.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays that this Court grant the following relief:

a.     Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation of Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the New Jersey Law Against Discrimination;

b.     Enjoin Defendants from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals meaningful access to and full and equal enjoyment of Defendants' facilities, services or programs;

c.     Order Defendants:

  i.     to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Plaintiff or other deaf or hard of hearing individuals by failing to provide effective communication;

  ii.     to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an on-site interpreter for effective communication, one will be provided as soon as practicable in all services offered by Defendants;

iii.     to develop, implement, promulgate, and comply with a policy to ensure that Defendants will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that Defendants will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

iv.     to develop, implement, promulgate, and comply with a policy to ensure, in the event the Defendants utilize a Video Remote Interpreting System ("VRI"), that such system has a high-speed Internet connection; a video screen with appropriate size, position, capture angle, focus, and proximity to the deaf individual; and appropriate audio quality. When possible, the equipment should be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

v.     to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing patients are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

vi.     to create and maintain a list of American Sign Language interpreters and ensure availability of such interpreters at any time of day or night;

vii.     to train all their employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA, Section 504 of the Rehabilitation Act, and the New Jersey Law Against

Discrimination;

viii.   to train all their employees, staff, and other agents on a regular basis about Defendants' policy regarding how to properly use VRI services (including how to set up the VRI system and how to obtain technical assistance in case of system malfunction or failure) and how to obtain interpreters when reasonably requested by deaf or hard of hearing patients;

d.  Award to Plaintiff:

i.   Compensatory damages pursuant to Section 504 of the Rehabilitation Act, and the NJLAD;

ii.   Punitive damages pursuant to the NJLAD;

iii.   Reasonable costs and attorneys' fees pursuant to the ADA, Section 504 of the Rehabilitation Act, and the NJLAD;

iv.   Interest on all amounts at the highest rates and from the earliest dates allowed by law;

v.   Any and all other relief that this Court finds necessary and appropriate.

## JURY DEMAND

Plaintiff demand trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

EISENBERG & BAUM, LLP

By:

Eric M. Baum, Esq. (EB-5493)
ebaum@EandBlaw.com

Andrew Rozynski, Esq. (AR-2870)
arozynski@EandBlaw.com

Attorneys for Plaintiffs
Office and Post Office Address
24 Union Square East, Fourth Floor
New York, NY  10003
(212) 353-8700